# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 17, 2001 Session

## KERRY JOE BRADLEY v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Maury County**
**No. 10402     Robert L. Jones, Judge**

---

**No. M2000-02222-CCA-R3-PC - Filed January 8, 2002**

---

The petitioner appeals from the denial of his post-conviction relief petition. The trial court found that the petitioner failed to prove by clear and convincing evidence that his guilty plea was not voluntary or that he received ineffective assistance of counsel. The judgment from the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

H. Randolph Fallin and Steve McEwen, Mountain City, Tennessee, for the appellant, Kerry Joe Bradley.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Robert C. Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Kerry Joe Bradley, was indicted on charges of first degree murder and especially aggravated robbery for fatally shooting Shane Sanders, stealing his wallet and burning his body. The petitioner pled guilty to the lesser offenses of second degree murder and aggravated robbery in exchange for an agreed sentence of thirty-five years for the murder and ten years for the aggravated robbery to be served concurrently. No direct appeal of his conviction was filed.

The petitioner filed a petition for post-conviction relief, alleging ineffective assistance of counsel and that his guilty plea was not voluntary. The petitioner alleged that counsel was ineffective for failing to investigate the petitioner's diminished capacity defense theory and for failing to file or properly investigate pretrial suppression motions contesting the admissibility of his

confessions and the murder weapon, which was seized without a warrant from the petitioner's home. The petitioner also alleged that his guilty plea was not voluntary because he was under the influence of drugs and alcohol at the time the guilty plea was entered. The post-conviction court denied his petition for post-conviction relief and the petitioner filed the instant appeal.

## FACTS

At the post-conviction proceeding, the petitioner, a juvenile at the time the murder was committed and investigated, presented testimony from both of his parents indicating that they were improperly excluded from the petitioner's discussions with police. Both the mother and father of the petitioner testified that at the request of Detectives Wrather and Brady, who had visited the petitioner's home earlier that day, they drove the petitioner to the police station for questioning concerning the murder of Shane Sanders. In addition, the petitioner's parents testified that they requested that they be allowed to remain in the room while the petitioner was questioned. Both parents testified that the detectives told them to stay in the room if they thought their son was guilty. Consequently, the petitioner's parents waited in the hallway while the detectives questioned the petitioner. The petitioner did not make any incriminating statements at this time but did reveal to police that the victim had recently been blackmailing the petitioner over a dispute related to property that was stolen from the victim's home.

Detectives Wrather and Brady questioned the petitioner again the following day. The petitioner's parents testified that the detectives returned the next evening and requested that his parents bring him down to the station again to discuss an unrelated matter. Both parents testified that they separately asked the detectives if the petitioner needed an attorney. Each parent testified that the detectives responded that the petitioner was not a suspect and that the questioning was not related to the murder investigation. The petitioner's mother testified that she did not accompany the petitioner to the police station on this occasion but that the petitioner's father drove him to the police station. The petitioner's father testified, contrary to the detectives, that he once again asked if the petitioner was a suspect, if the petitioner needed an attorney, and if the petitioner's father could remain in the room during questioning. He testified that the detectives once again responded that the petitioner was not a suspect and that they wished to question him without his father present.

Detective Brady testified for the state that neither he nor Detective Wrather asked the petitioner's father to leave the room on this occasion. In contrast, Detective Brady testified that the petitioner's father was irate with the petitioner and instructed the petitioner that he had better tell the detectives everything he knew. Detective Brady further testified that the father told the detectives that if they had any problems with the petitioner not answering their questions to let him know and "when [he was] done with [the petitioner], [the petitioner] will tell [the detectives what they want to know]."

The detectives questioned the petitioner, without his father present, and the petitioner admitted to killing the victim. According to testimony by the petitioner's father and Detective Brady, the petitioner was then taken into custody and transported to a juvenile detention facility. The petitioner's father, mother and sister testified that later that same night, they were at home when

they heard noise coming from outside. The petitioner's sister testified that she went outside where she found Detectives Brady and Wrath er and asked them to come inside and speak with her father. The petitioner's father testified that the detectives came inside and told him that the petitioner had drawn a map of the property depicting where the murder weapon was located. When the petitioner's father insisted on going outside with the officers to retrieve the weapon, the detectives informed him that they had already retrieved the gun from a bush beside the driveway.

The detectives' written reports of the investigation, which were entered as exhibits at the post-conviction proceeding, differed from one another and from the petitioner's father's version of events concerning how the weapon was retrieved. Detective Wrather's report indicated that the petitioner told the detectives where the weapon was and that the petitioner's father gave them permission to come and get it while the petitioner's father was still at the police station. Detective Brady's report, however, indicated that the petitioner drew a map of the weapon's location but that the weapon was sticking out of a bush in plain view when the detectives pulled into the driveway later that night.

The petitioner's sister testified that she hired an attorney to represent the petitioner on Thursday, the evening after the petitioner admitted to the murder and was taken into custody. She testified that she made three calls to the police department on Friday, the following morning, to inform the detectives that the petitioner was represented by counsel. She left a message to that effect each time she called. Detective Brady, however, testified that neither he nor Detective Wrather received those messages prior to picking up the petitioner at the juvenile detention center that day and eliciting yet another more incriminating confession from him.

The petitioner's former counsel testified at the post-conviction hearing and acknowledged that he never filed a motion to suppress the murder weapon or any of the confessions given by the petitioner. He testified that he did not remember nor did he take any notes that would refresh his memory as to what information he had concerning those events at the time they transpired but that he was probably aware of the facts as the petitioner's family testified to them. The petitioner's mother and father testified that they gave trial counsel detailed information about the circumstances in which the confessions were made and the seizure of the murder weapon.

The petitioner's family and friends also testified at the post-conviction hearing to the severe change in the petitioner's behavior in the summer months preceding the murder. The victim was ten years older than the petitioner and the petitioner alleged that the victim had sexually abused him during the summer months preceding the murder. The family testified and the petitioner's former counsel verified that the family repeatedly suggested a mental evaluation to support a defense of diminished capacity or lack of mental culpability based on the sexual abuse allegations. A counselor, who had not performed any evaluation of or diagnostic tests on the petitioner, testified that the petitioner exhibited some signs of post-traumatic stress and that she had recommended to the petitioner's counsel that a mental evaluation be done. The petitioner's former counsel testified that the one thing that he did not do that he felt that he should have done was to order a mental evaluation of the petitioner. Counsel testified that the reason that he did not order an evaluation at the time was because he was very impressed with the petitioner's intelligence and communicative

ability. Counsel further testified that he was worried that an evaluation, which reflected that the petitioner was not mentally impaired, would harm rather than help his defense.

The petitioner's former counsel also testified that the reason that he advised the petitioner to accept the plea agreement was because there was not any evidence to support the petitioner's allegations of sexual abuse other than the petitioner's word. In fact, just before the case was to go to trial, the state obtained evidence that undermined the defense's theory that the petitioner had been sexually abused by the victim. We are able to glean from the post-conviction record that two of the petitioner's witnesses recanted prior statements, which substantiated the petitioner's sexual abuse allegations, and planned to testify at trial for the State. The petitioner's former counsel testified that this was the reason that he offered the plea agreement alternative to the petitioner just two days before the trial date.

The petitioner's family also testified that the petitioner was under the influence of drugs and alcohol at the time his guilty plea was entered. The petitioner's sister testified that she observed the petitioner drinking schnapps liquor straight from the bottle in his room the night before he pled guilty. A friend of the family also testified that she observed the petitioner drink "quite a bit," and smoke marijuana the night before he pled guilty. The petitioner's sister also testified that the petitioner took two valium the morning that he pled guilty. The trial court record reflects that the petitioner disclosed to the court, prior to entry of his guilty plea, that he consumed about a liter of schnapps liquor, smoked marijuana, took two valium the night prior to pleading guilty, and then took two valium prior to coming to court that morning. The court asked the petitioner's counsel if the court should "go ahead with this plea" in light of the fact that the petitioner had consumed alcohol and taken drugs shortly before coming to court. The petitioner's counsel responded that the petitioner did not "appear to be under any [e]ffect of anything" and that the petitioner's counsel could not "tell any difference [then] than all the other previous conversations that [he] had with [the petitioner] in the last year." Subsequently, the trial court accepted the petitioner's guilty plea and sentenced him to an agreed sentence of thirty-five (35) years for the second degree murder and ten (10) years for the aggravated robbery, to be served concurrently.

## ANALYSIS

The issue presented by the petitioner in this appeal is whether the post-conviction court erred in finding that he had effective assistance of counsel and that his guilty pleas were knowing and voluntary. Specifically, the petitioner alleges that his trial counsel was ineffective for (1) failing to file a motion to suppress confessions made to the police while the petitioner was a juvenile and without his parents present, (2) failing to file a motion to suppress the murder weapon, which was recovered by police from the home of the petitioner's parents without a search warrant or consent of the petitioner's parents, and (3) failing to request or obtain a mental evaluation of the petitioner to support the petitioner's allegation that the victim had sexually abused the petitioner. In addition, the petitioner alleges that the guilty pleas were involuntary and without full understanding of their consequences because the petitioner was only eighteen years old and under the influence of numerous drugs and alcohol at the time that the pleas were entered.

A. Effectiveness of Counsel

Post-conviction petitioners bear the burden of proving their allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the trial court's findings of fact are given the weight of a jury verdict, and are conclusive unless the evidence preponderates against them. Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997); Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

In order to receive post-conviction relief on the basis of ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing a claim of ineffective assistance of counsel, this court need not address both prongs if we determine that the petitioner has failed to carry his burden with respect to either prong. Henley, 960 S.W.2d at 580.

When addressing an attorney's performance, this court will not "second-guess strategic and tactical choices" made by counsel, and counsel will not be deemed ineffective even if a different strategy might have produced a more favorable result. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Rather, a court reviewing counsel's performance should "eliminate the distorting effects of hindsight . . . [and] evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. However, "deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996).

Since the petitioner pled guilty, he must make an additional showing in order to prevail on an ineffective assistance of counsel claim. "In cases involving a guilty plea . . . , the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W. 2d 240, 246 (Tenn. Crim. App. 1998).

In the instant appeal, the post-conviction court found that the petitioner's trial counsel was not ineffective for failing to obtain a mental health evaluation or for failing to file motions to suppress the petitioner's confessions or the murder weapon. Specifically, the trial court found that there was not any evidence from "a qualified expert" to substantiate that the petitioner had suffered from any mental defect which would have reduced his culpability for first degree murder. Therefore, an evaluation would not have been helpful to the defense and any such evaluation could have been used by the State against the petitioner. Although trial counsel admitted at the post-conviction hearing that he probably should have had a mental evaluation conducted on the petitioner, the record also supports that decision not to obtain such an evaluation as a tactical decision based on counsel's observations of the petitioner and his fear that the evaluation would end up hurting the defense. Such a reasoned and informed strategy will not be viewed as deficient even if a different strategy

would have yielded a more favorable result, which is not the case here. Moreover, no prejudice has been shown to exist for not obtaining a mental evaluation.

We next turn to the petitioner's claim that counsel was ineffective for failing to file a motion to suppress the petitioner's three statements to the police.[1] The post-conviction court found that the petitioner's parents were present at the police department and aware that the petitioner was being questioned during his first two interviews with the police. The admissibility of a juvenile's confession is not dependent upon the presence of his parents in the interview room. See State v. King, 1997 Tenn. Crim. App. No. 02C01-9509-CR-00280, 1997 WL 41256, at *3-4 (Tenn. Crim. App. at Jackson, Feb. 4, 1997). Consequently, the post-conviction court found that trial counsel's failure to file a motion challenging the admissibility of the petitioner's statements does not amount to ineffective assistance of counsel because it would not have been successful. The post-conviction court, however, did not address counsel's failure to file a motion to suppress the third statement that the petitioner made to police after counsel had been retained. Because trial counsel did not offer a strategic reason for failing to file any of the motions to suppress, his failure to do so is not protected as a tactical decision. After a de novo review of the issue, however, we find no prejudice to the petitioner by counsel's failure to file a motion to suppress the statement because such a motion would not have been successful. The petitioner waived his right to counsel verbally and/or in writing on each occasion when he was interrogated by the police. Therefore, his waiver was sufficient for the police to have assumed he did not invoke his right to counsel.

The post-conviction court also found that failure to file a motion to suppress the murder weapon did not prejudice the petitioner because such motion would not have been successful. The court found that the gun was in plain view when the officers pulled into the driveway of the petitioner's home, that testimony by the petitioner's father evidenced his intent to give consent to the search when he offered to go with the officers to retrieve the gun, and that the petitioner lacked standing to challenge the seizure of the gun from his parents home after he had drawn a map for the officers depicting where it was located. The record supports the post-conviction court's findings.

In summary, the petitioner failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence. The record does not support the conclusion that any of the proposed motions to suppress would have been successful. Therefore, failure to file such motions did not prejudice the petitioner. In addition, the record reveals that trial counsel made an informed strategic decision not to have the petitioner evaluated for mental defects, which did not amount to deficient performance.

B. Voluntariness of Guilty Plea

---

[1] The petitioner's first statement to the police was not incriminating but did reveal that the victim had been blackmailing the petitioner shortly before the murder. The second statement was taken the next evening at the police station. The petitioner admitted to killing the victim in this statement but indicated that it was in self-defense. The third statement was taken two days later, after the petitioner was taken into custody and detained in a juvenile detention center. In this statement, the petitioner revealed that the murder was not in self-defense but was premeditated.

The petitioner alleges that his guilty plea was not voluntary with full understanding of the consequences. Specifically, the petitioner challenges the voluntariness of his guilty plea because he was under the influence of intoxicants and was only eighteen years old at the time of the plea. We remind the petitioner that in order to succeed on a post-conviction claim, he must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). When this court undertakes review of a lower court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive on appeal absent a finding that the evidence preponderates against the judgment. Davis v. State, 912 S.W.2d 689, 697 (Tenn. 1995). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Finally, questions concerning the credibility of witnesses and the weight to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

When reviewing the entry of a guilty plea, the overriding concern is whether the plea is knowingly, voluntarily and understandingly made. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969). "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). A court charged with determining whether a guilty plea was voluntary must look to several factors such as the intelligence of the defendant, his familiarity with criminal proceedings, whether he had the opportunity to confer with counsel about other options available to him, and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. Blankenship, 858 S.W.2d at 904 (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

In this case, the petitioner failed to sustain his burden of proof with respect to his factual allegations. The petitioner claimed that the influence of alcohol, marijuana and prescription medication rendered him unable to enter a knowing, voluntary and intelligent guilty plea. The lower court found the petitioner's proof lacking, and the record of the trial court supports the post-conviction court's findings.

The trial court was aware that the petitioner had been under the influence of intoxicants shortly before coming to court. However, the trial record reveals that the petitioner was represented by counsel and had conferred with counsel for more than an hour before pleading guilty. In addition, the trial judge questioned the petitioner extensively concerning the influence, if any, that the intoxicants had upon him. Specifically, the trial judge asked the petitioner if the valium "made [the petitioner] think that this is any less serious than it was before [the petitioner] took that medicine." The petitioner responded that it had not and that he thought the proceeding was a "big deal" and always would be a "big deal." The trial judge also asked the petitioner's counsel if counsel thought that the court should proceed with the plea in light of the fact that the petitioner had admitted to drinking alcohol, smoking marijuana and taking valium shortly before coming to court. The petitioner's counsel indicated that the petitioner did not appear to be under the effect of anything and that he believed that it would be appropriate to proceed with the guilty plea.

There is no indication from the transcript of the guilty pleas that the petitioner was impaired in his ability to understand the seriousness of the proceedings or to voluntarily enter a plea of guilty. The trial court engaged in a lengthy dialogue with the petitioner, during which the trial judge informed the petitioner of the rights that the petitioner was waiving by pleading guilty. The petitioner was articulate throughout the dialogue and at one point calculated for the court the age at which he would be released from prison under the terms of the plea agreement. It is, therefore, clear from the trial court's record that the petitioner's plea of guilty was both knowing and voluntary.

The petitioner has failed to prove by clear and convincing evidence that his guilty plea was not voluntary or that he received ineffective assistance of counsel. The lower court properly denied the petition for post-conviction relief and we affirm its judgment.

_____
JOHN EVERETT WILLIAMS, JUDGE